IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIERITA MARIE ELHALABY<br>9501 Shakespeare Pkwy<br>Cleveland, OH 44108 | ) ) ) ) | CASE NO: |
| Plaintiff, | ) ) | JUDGE |
| v. | ) ) ) | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| CUYAHOGA COUNTY<br>2079 E. 9th Street, 8th Floor<br>Cleveland, OH 44115 | ) ) ) ) | **(Jury Demand Endorsed )** |
| And | ) ) | |
| CUYAHOGA COUNTY SHERIFF'S DEPARTMENT<br>1255 Euclid Avenue<br>Cleveland, OH 44115 | ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff Tierita Marie Elhalaby, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

## PARTIES

1. Elhalaby is a resident of the city of Cleveland, Cuyahoga County, State of Ohio.

2. Cuyahoga County is an Ohio political subdivision with its principal place of business in Cleveland, Ohio.

3. Cuyahoga County Sheriff's Department is an Ohio political subdivision with its principal place of business in Cleveland, Ohio.

4. Together, Cuyahoga County and Cuyahoga County Sheriff's Department shall collectively be referred to in this Complaint as the "County".



## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Elhalaby is alleging federal law claims under Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C.A. § 2000e *et seq.*

6. This Court has supplemental jurisdiction over Elhalaby's state law claims pursuant to 28 U.S.C. § 1367 as Elhalaby's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. More than 180 days have passed since Elhalaby filed her formal complaint with the Equal Employment Opportunity Commission ("EEOC") in Agency Charge No. 22A-2014-02266.

9. Elhalaby has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

10. On May 12, 2015, the EEOC mailed a Dismissal and Notice of Rights letter to Elhalaby.

11. Elhalaby has filed this Complaint within 90 days of receipt of the Dismissal and Notice of Rights letter.

12. A true, accurate and complete copy of the Dismissal and Notice of Rights letter is attached as Exhibit 1.

## FACTS

13. Elhalaby is a former employee of the County.

14. The County hired Elhalaby in May, 2007.

15. The County hired Elhalaby to the position of registered nurse.

16. Throughout her employment, Elhalaby worked as an employee of the County's Sheriff's Department.



17. Throughout her employment, Elhalaby was subjected to a hostile work environment based on her race by her supervisor Pat Ruzicka.

18. Ruzicka is Caucasian.

19. This hostile work environment prompted Elhalaby to file multiple OCRC/EEOC charges of discrimination including allegations of race discrimination and other forms of harassment.

20. Elhalaby complained throughout the latter part of her employment regarding disparate treatment against her by Ruzicka based on her race.

21. As a result of this conduct, on April 18, 2014, Elhalaby filed an OCRC/EEOC charge claiming discrimination by Ruzicka and the County.

22. Almost immediately following a charge of discrimination with the OCRC/EEOC, the County retaliated against Elhalaby by wrongfully blaming her for an incident regarding an inmate's miscarriage that occurred on or around April 2, 2014.

23. On or around March 26, 2014, Elhalaby was working in the basement doing intakes and encountered the inmate in question.

24. When Elhalaby examined the inmate, she revealed to Elhalaby that she "thought" she was pregnant and was also a heroin user.

25. Elhalaby expressly noted both of these facts in the computerized Initial Health Screening Form.

26. The Initial Health Screening Form is the same form that is available to all other County personnel who would need that information, including the medical department and dispensary.

27. In addition to reporting the possible pregnancy and heroin use in the computer form, Elhalaby also provided this same information in the initial booking card, which was then given to the corrections officer, Karen Salvino.



The Employee's Attorney.™

28. This card is supposed to be given, either by the inmate or officer, to the medical department if the inmate needs to report to medical.

29. Elhalaby also reported the suspected pregnancy and heroin use in both the GYN list and Medical list.

30. Elhalaby delivered both of these lists to the medical department on the 6th floor on the same day she saw the inmate.

31. In total, there were four different methods by which Elhalaby reported the information regarding the inmate in question.

32. Elhalaby does not have the power to send an inmate to Metro hospital based on a "suspected" pregnancy and drug use.

33. Elhalaby is supposed to simply make these notations and provide that information to the medical department so the inmate can receive a pregnancy test to determine if she should be sent to the hospital.

34. Elhalaby did exactly what she is supposed to do as the registered nurse working in the basement.

35. At the same time Elhalaby was performing her job duties regarding the pregnant inmate, several other County employees failed to do their jobs.

36. Officer Salvino failed to take the inmate up to medical.

37. Officer Salvino took the inmate to the 4th floor for booking and then sent her back to her cell or "pod."

38. Officer Salvino's conduct was done without Elhalaby's knowledge.

39. Officer Salvino was not disciplined by the County for her misconduct.

40. Officer Salvino is Caucasian.



41. Officer Salvino had not filed any OCRC/EEOC Charges against Ruzicka or the County prior to this event.

42. On March 29, 2014, the same inmate was seen by the Nurse Practitioner in the dispensary, Fannie May.

43. During this examination, May saw that the inmate was pregnant and confirmed that fact with a pregnancy test.

44. May did not send the inmate to the hospital.

45. Her alibi for not doing so was her allegation that she "did not know" that the inmate was a heroin user because she was not showing signs of withdrawal.

46. Had May did her job correctly she would have read the inmate's history in the Initial Health Screening Form, the GYN list and the Medical list, all of which would have confirmed her heroin use.

47. After her pregnancy confirmation, May sent the inmate back to her pod and not to the hospital.

48. Elhalaby had no involvement in this March 29, 2014 examination.

49. May was not disciplined by the County for her misconduct.

50. May had not filed any OCRC/EEOC Charges against Ruzicka or the County prior to this event.

51. On April 2, 2014, the inmate in question was sent to Metro hospital where she "spontaneously aborted" her pregnancy.

52. After these events, Elhalaby filed her April 18, 2014 OCRC/EEOC charge against Ruzicka and the County for ongoing mistreatment against her and retaliation based on the filing of prior OCRC/EEOC charges.

53. Following these events, and following Elhalaby's OCRC/EEOC charge, the County scheduled Elhalaby for a pre-disciplinary conference on April 22, 2014.

The Employee's Attorney.™ 

54. The April 22, 2014 pre-disciplinary conference was the first time the County had put any blame on Elhalaby for the inmate's miscarriage.

55. At that conference, the County blamed Elhalaby entirely for the events regarding the pregnant inmate and singled her out for disciplinary action.

56. The County blamed Elhalaby for the fact that the Health Care Services Shift Report sheet for March 26, 2014 did not mention the inmate being pregnant with a heroin addiction.

57. It is not part of Elhalaby's job to fill out the Health Care Services Shift Report sheet.

58. The County failed to explain how it was Elhalaby's fault that this form, which is located in the medical office on the 6th floor, was not filled out by personnel in the medical office.

59. It was the responsibility of the LPNs in the dispensary, Kim Stipek and Janet Hodgson, to fill out the Health Care Services Shift Report form based on the information received from Elhalaby.

60. Stipek and Hodgson should have used the same information that Elhalaby provided to the dispensary in four different written forms on March 26, 2014 in order to complete the Health Care Services Shift Report form.

61. Despite this information, neither Stipek nor Hodgson completed the Health Care Services Shift Report form.

62. The County did not discipline Stipek for her misconduct surrounding the inmate's miscarriage.

63. Stipek is Caucasian.

64. Stipek had not filed any OCRC/EEOC Charges against Ruzicka or the County prior to this event.

65. The County did not discipline Hodgson for her misconduct surrounding the inmate's miscarriage.

66. Hodgson is Caucasian.



67. Hodgson had not filed any OCRC/EEOC Charges against Ruzicka or the County prior to this event.

68. On June 17, 2014, the County terminated Elhalaby's employment.

69. Following her termination, Elhalaby filed another OCRC/EEOC charge of discrimination on June 18, 2014.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2

70. Elhalaby restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Throughout her employment, Elhalaby was fully competent to perform her essential job duties as a registered nurse within the County's Sheriff's Department.

72. The County treated Elhalaby differently than similarly situated Caucasian employees.

73. Ruzicka's hostility towards Elhalaby was based on her race.

74. Ruzicka, acting on behalf of the County, encouraged and supported unlawful discrimination against Elhalaby.

75. The County terminated Elhalaby based on her race.

76. The County falsely accused Elhalaby of committing negligence in regards to her duties as a registered nurse based on her race.

77. The County's conduct was in violation of 42 U.S.C.A § 2000e-2

78. As a direct and proximate cause of the County's wrongful conduct, Elhalaby has suffered and will continue to suffer damages.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *ET SEQ.*

79. Elhalaby restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



80. Throughout her employment, Elhalaby was fully competent to perform her essential job duties as a registered nurse within the County's Sheriff's Department.

81. The County treated Elhalaby differently than similarly situated Caucasian employees.

82. Ruzicka's hostility towards Elhalaby was based on her race.

83. Ruzicka, acting on behalf of the County, encouraged and supported unlawful discrimination against Elhalaby.

84. The County terminated Elhalaby based on her race.

85. The County falsely accused Elhalaby of committing negligence in regards to her duties as a registered nurse based on her race.

86. Defendants violated Ohio Revised Code § 4112.01 *et seq.* by discriminating against Elhalaby due to her race.

87. Defendants violated Ohio Revised Code § 4112.01 *et seq.* by terminating Elhalaby due to her race.

88. Pursuant to Ohio Revised Code § 4112.02(A), it is an unlawful discriminatory practice to "discharge without just cause, to refuse to hire, or otherwise to discriminate against [an employee] with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment" based on that employee's race.

89. As a direct and proximate cause of the County's wrongful conduct, Elhalaby has suffered and will continue to suffer damages.

### COUNT III: RETALIATORY WRONGFUL TERMINATION IN VIOLATION OF 42 U.S.C. § 2000e-3

90. Elhalaby restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. Elhalaby regularly opposed unlawful racial discrimination at the County.



92. Elhalaby opposed race discrimination by filing multiple charges of discrimination with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission.

93. Elhalaby's complaints to the OCRC and EEOC were considered protected activity under Title VII.

94. As a result of Elhalaby's OCRC and EEOC charges of discrimination, the County terminated her employment.

95. As a result of Elhalaby's OCRC and EEOC charges of discrimination, the County falsely accused her of negligent conduct in performing her job duties.

96. The County's conduct was in violation of 42 U.S.C.A § 2000e-3.

97. As a direct and proximate cause of the County's wrongful conduct, Elhalaby has suffered and will continue to suffer damages

### COUNT IV: RETALIATORY WRONGFUL TERMINATION IN VIOLATION OF OHIO REVISED CODE § 4112.02(I)

98. Elhalaby restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. Elhalaby regularly opposed unlawful racial discrimination at the County.

100. Elhalaby opposed race discrimination by filing multiple charges of discrimination with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission.

101. Elhalaby's complaints to the OCRC and EEOC were considered protected activity under R.C. § 4112.02(I).

102. As a result of Elhalaby's OCRC and EEOC charges of discrimination, the County terminated her employment.

103. As a result of Elhalaby's OCRC and EEOC charges of discrimination, the County falsely accused her of negligent conduct in performing her job duties.



104. Pursuant to Ohio Revised Code § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section. …"

105. The County's conduct was in violation of R.C. § 4112.02(I).

106. As a direct and proximate cause of the County's wrongful conduct, Elhalaby has suffered and will continue to suffer damages.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

107. Elhalaby restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. The County intended to cause Elhalaby emotional distress, or knew that its acts or omissions would result in serious emotional distress to Elhalaby.

109. The County's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

110. As a direct and proximate cause of the County's acts and omissions as set forth above, Elhalaby has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

111. As a direct and proximate cause of the County's conduct and the resulting emotional distress, Elhalaby has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Elhalaby requests judgment against the County as follows:

(a) Issue a permanent injunction:

    (i) Requiring the County to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

The Employee's Attorney.™ 

    (iii) Requiring removal or demotion all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring the County to restore Elhalaby to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Elhalaby for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys fees and non-taxable costs for Elhalaby's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

The Employee's Attorney.™ 

Respectfully submitted,

*/s/ Fred M. Bean*

Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC**
4620 Richmond Road, Suite 290
Warrensville Heights, OH 44128
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: Fred.Bean@SpitzLawFirm.com

*Attorney For Plaintiff Tierita Marie Elhalaby*

## JURY DEMAND

Plaintiff Tierita Marie Elhalaby demands a trial by jury by the maximum number of jurors permitted.

*/s/ Fred M. Bean*

Fred M. Bean (0086756)
**THE SPITZ LAW FIRM, LLC**

